case, Sowell v. Tinley-Renahan v. Dost. May it please the Court, this is George Mandello for the Appellants. I'd like to bring to the Court's attention that Attorney Tinley filed a supplemental appendix, Document 64. It contains a motion for protective order, however that motion for protective order is not the protective order at issue in this case. The protective order at issue in this case is in the District Court record at Document 34-2, page 109. With respect to the state action issue, disciplinary initiation and prosecution of disciplinary proceedings is clearly state action. The issue presented in this case is whether a lawyer who initiates and prosecutes disciplinary proceedings in court is a state actor. But we don't get there unless you get past Rooker-Feldman, so why don't you address the Rooker-Feldman issue? Yes, Your Honor. Plaintiff's challenge to Rule 4.2 is on First Amendment grounds. I attempted to challenge 4.2 on First Amendment court on subject matter jurisdictional grounds. In the District Court, plaintiffs did not challenge the adverse state court decisions themselves. Instead, we targeted as unconstitutional the rule the appellate court authoritatively construed, that is Rule 4.2. Mr. Mandello, your complaint throughout attacks the state court rulings. Does it not? It does not attack the state court rulings, Your Honor. What it needs to do is to address the state court rulings, particularly the ruling of the appellate court, because the appellate court has applied Rule 4.2 in a manner that plaintiffs consider is unconstitutional. You're unhappy with how the appellate court applied Rule 4.2, that's what you're saying? Yes, and the reason why this is a permissible challenge is that the U.S. Supreme Court in Skinner v. Schweitzer determined that if the constitutional challenge is not determined by the state court in its judgment, then it does not bar District Court review of the constitutional challenge. Here, there was no First Amendment challenge to 4.2 presented to or determined by the appellate court, so it's really not a challenge to the decision made by the appellate court. It's a challenge to the application of the rule, which is now binding precedent in the state court. In that respect, how do you have standing? Is there anything imminent? Are you planning on violating the rule again? I mean, why do you have standing? The standing is based on the fact that at the time that the District Court action was filed, the Sol case continued to be pending in the state Superior Court, and in that action, there was the protective order remained outstanding, so the protective order continued to First Amendment rights as long as it remained in effect. Now, the Sol action was settled after the District Court action was filed, but that's not relevant to the standing issue. If I had standing when the action was filed, I continue to have standing as long as the claims are not moot, and this is a situation where the District Court did not address the mootness issue. It was not raised in the District Court, and as I've indicated in the reply brief, the standing issue is not barred here by the mootness doctrine, because neither the appellate court nor the state Supreme Court has disavowed the application of Rule 4.2 by the appellate court, which is now a binding precedent applicable to me and all other attorneys in the state. I think that that really is the critical issue with respect to standing. There really can't be any doubt in my mind that at the time that the I was subject to a protective order, which was impinging the exercise of First Amendment rights. Let me ask you this. This is Judge Parker, Mr. Mandillo. You're not just someone off the street. You're an officer of the court and a member of the bar. Didn't you understand that you were not supposed to contact represented parties? Well, your honor, in this case, the persons I communicated with were not represented parties. They were constituents of a corporation, putative constituents of a corporation. What do you mean, constituents of a corporation? What does that mean? They were putative members of the board of directors of this defunct, dissolved, non-profit corporation. But the communications, the only communication I had with these members of the board was a notice of claim letter telling them that I intended to file a claim on behalf of my client against them individually. And rule 4.2- Mr. Mandillo, you have one minute. And of course, you saved some time for rebuttal. You have one minute. Well, I would suggest that this case is really a case about rule 4.2 and its application by the Connecticut court. The rule is, I think it's widely understood that the rule is a difficult rule in application. Connecticut, the Connecticut courts, unfortunately- What's the difference about it? It's a rule lawyers live with every day. Why are you entitled to some exemption from it? I don't believe that I'm entitled to an exemption from it, your honor. I believe that the rule and its application is vague and overbroad. And that's why the first amendment challenge to the rule. The authorities who have looked at this have acknowledged that it's- Did you violate 4.2? No, I did not. I did not violate 4.2. Thank you. Okay. You've saved some time for rebuttal. We'll hear from the other side. Thank you. Good morning, your honors. May it please the court, I'm assistant attorney general Michael Sold and I represent the judicial defendants in this appeal. The court should affirm the judgment for two reasons. First, the district court properly concluded that the Rooker-Feldman doctrine bars plaintiff's claims to the extent they are based on injuries caused by the state court judgments in the Sol and Mandela litigation. And in our view, your honors, this applies to all injuries the plaintiffs identify all were caused by and are directly attributable to the state court's protective order in the Sol litigation. Second, to the extent that the court determines the plaintiffs properly fled an independent facial challenge to the rule of professional conduct, which we don't think they did. The district court properly concluded that plaintiffs lack standing for any such claim because plaintiffs failed to identify any independent injury caused by the rule itself as opposed to the state court judgments applying. With regard to Rooker, as the court is well aware, Rooker prohibits federal courts from entertaining claims by state court losers complaining of injuries caused by state court judgments. And that's exactly what plaintiffs seek to do in this case, your honors. The state court determined that attorney Mandela violated rule 4.2 because he communicated with representative parties and then imposed a protective order against it. Mandela then sought to challenge that ruling in various state forums and he lost in each of those forums. And instead of petitioning the Supreme Court for cert on any federal claims related to the state court ruling, he brought this lawsuit asking the district court to review the state court rulings and to declare them unconstitutional. And that is quintessential Rooker. I want to emphasize that this applies to all of plaintiff's claims, including the purported independent facial challenges in counts 3, 4, 9, and 10. And that's really for two reasons. First, the claims in those counts, contrary to what the district court held, are not independent facial challenges at all. They're as applied challenges in which plaintiff asked the court to declare the rule unconstitutional, but only to the extent that it was interpreted and applied by the state courts in plaintiff's own cases. And regardless of what label plaintiffs ascribed to those claims, they are as applied challenges, not facial challenges. And second, even if they were facial challenges, all of the claims in those counts still are based on injuries that were exclusively caused by the state court just interpreting and applying the rules to plaintiffs. And in particular, the only injuries the plaintiffs identified were harm to attorney Mandela's professional reputation as a result of the protective order and plaintiff's inability to communicate with the YFS board members as a result of the protective order. Both of those injuries are tied directly to the state court's protective order and would not exist but for it. And so I think no matter how the court slices it, these are challenges to the state court rulings and they're barred by record. The second point, Your Honor, on standing, to the extent that the court determines the plaintiff did plead an independent facial challenge to the rules in counts 3, 4, 9, and 10, the district court properly determines the plaintiff's standing for those claims. To have standing for an independent facial challenge that is not barred by Rooker, plaintiffs had to identify a cognizable injury that is attributable to the rule on its face and not to the state court judgment supplying it. And the plaintiffs just did not identify any such injury. The only injury that they even arguably tried to argue below was attorney Mandela's subjective fear that he will be harmed by the there's an enforcement action pending, that any enforcement action has been threatened, or that attorney Mandela even intends to engage in conduct that potentially could violate the rule in the future. In the absence of those allegations... I gather no disciplinary proceedings of any kind were commenced? No, Your Honor. My understanding is that the Superior Court issued a protective order but there was no other sanction or disciplinary proceedings that were initiated. And there are none pending to my knowledge at this time. Certainly, the plaintiffs did not allege it. And in the absence of tangible allegations that attorney Mandela intends to engage in potentially prohibited conduct in the future, his subjective fear that the rule be enforced against him at some unknown time in the future is not enough for Article 3 standing under Lujan, Clapper, and numerous other cases. And I think that these issues are all fully briefed, so unless the court has any questions, I'll rest on my brief. Okay, let's hear from your colleague, Mr. Tinley. Good morning, Your Honors. May it please the court. I represent myself, my law firm, and attorney John Majewski. I would like to join in the arguments made by counsel for the judicial defendants, and I will not reiterate the similar arguments set forth in our brief, but will stand on those well. However, I would like to briefly discuss two related points this morning. First, I would like to take a step back and look at the broad picture. The issue presented to this court arose when attorney Mandela took it upon himself to write letters to the members of the Board of Directors of the organization I represented, telling them that their lawyer had filed a frivolous counterclaim and threatening them that unless they caused their lawyer to withdraw that counterclaim, he would sue them personally. The discussion here is focused on Rule 4.2, but the power of the courts to issue a protective order to stop this kind of misconduct is, as the Connecticut Supreme Court has held repeatedly, inherent in the court's power to regulate proceedings before the court. In Connecticut, this inherent authority is articulated in Section 13-5 of our practice book, which provides that the court may make any order which justice requires to protect a party from undue annoyance, embarrassment, oppression, or undue burden or expense. The same principles are reflected in Federal Rule 26C. The inherent authority of the courts to issue a protective order on the present facts is as clear and bright as day, regardless of whether Rule 4.2 ever existed or was ever invoked. The egregiousness of the misconduct here is particularly clear when one considers that attorney Mandela could have brought his concerns directly to the presiding judge. He chose instead to go around the court, to go around counsel in a blatant attempt to interfere with and to undermine the attorney-client relationship. The appellants would torture these facts into a violation of their civil rights and an abusive process. There was no violation and no abuse. Counsel acted well within the rules and the court acted comfortably within its inherent authority. My second point, which is a matter of great concern, is the appellants have in fact been able to make these frivolous claims repeatedly and have profited by them through a settlement with the insurer without repercussion. The real threat posed by these claims was captured by Judge Meyer when he described them as baseless claims brought by, quote, a trained lawyer against, quote, a vexing choice of defendants. I have been trained to understand that so-called floodgates arguments generally are ineffective, but in this case it would not take a flood of cases like the present one to cause significant damage to our justice system. If judges, attorneys, and insurers are permitted to become the targets of such misguided claims without repercussion, then the fundamental premises underlying the orderly functioning of our system are threatened. And let there be no mistake, all the high-minded and hollow rhetoric you have heard about constitutional violations is a smoke screen for what is financially motivated, cynical, and vindictive conduct. The obvious lack of merit in all of appellants' claims belies their true purpose. Throughout this process, we have stood up for our clients, ourselves, and as best we could for the system. But since I am not, as Attorney Mandela would have you believe, a, quote, state actor, I cannot take action to vindicate the affront to our legal system. And that is why I would conclude by respectfully submitting to this court that it is now time for the system to stand up for itself. Thank you for your time. Thank you. Mr. Mandela, your rebuttal. Thank you, Your Honor. Attorney Tinley did not represent the corporation or the constituents of the corporation at the time I sent the claim letter. The appellate court applied for conclusive presumptions and applied Rule 4.2 retroactively to find that I had violated the rule. Now, did you point that out when you were first appraised that this charge of judicial misconduct was being leveled at you? Yes. Yes, I did. And, Your Honor, just to... That was litigated below, right? The problem here, Your Honor, and not avoiding your question... Whether that was litigated below? It was not litigated below. It was not litigated below. The problems that arose here arose out of the appellate court's decision and application of the rule. And there's been no review of the challenges to the appellate court's application of the rule by any court. There's no judgment pertaining to the constitutional challenges to the appellate court's application of the rule. Your arguments show precisely why this is barred by Rooker-Feldman. You're complaining about the appellate court's ruling. I'm not, Your Honor, because the fact of what the appellate court... You say that in one sentence when in the sentence before you complained about the appellate court ruling. I have great difficulty understanding what you are trying to do here. I'm trying to challenge Rule 4.2 both on its face and as it was applied by the appellate court. Not because... Not challenging the appellate court's decision because it's final, but challenging Rule 4.2 as authoritatively construed by the appellate court. And I have standing to do so because that rule, as applied by the appellate court, continued to bar the exercise of my First Amendment rights and my client's First Amendment rights. So while I understand that this is a complex case, in the final analysis, this is seeking prospective declaratory relief with respect to an unconstitutionally overbroad and vague rule and a rule that, as applied by the Connecticut appellate court, now a binding precedent in the is clearly unconstitutional. The appellate court's application of the rule sanctions the application of conclusive presumptions to determine the existence of an attorney-client privilege. It also applies agency ratification doctrine that the retroactive aspect of agency ratification doctrine to the formation of a lawyer-client relationship. In this case, there was clearly no lawyer-client relationship between Tinley and the corporation at the time I sent that claim letter. After I sent the claim letter, Tinley realized that he had not been hired by the corporation, which is a defunct, dissolved, non-profit corp that had had no meeting of the board of directors since prior to the initiation of the SOLE action. Tinley recognized that, and he then summoned these putative board members to a ratification meeting to try to then cure the fact that he had not been retained by the corporation. He was retained by a member of the corporation who did not have the authority to retain him. So the clarity here, when the law is looked at, is that it's impossible to sanction an attorney for sending a letter to an unrepresented corporation, which only becomes represented as a result of a ratification hearing or meeting by the board after the communication is made. This punishes communications. You erased all these issues below. You made your arguments, and you lost. That's not correct, Your Honor. No, it's not correct, because I could not have raised these issues below, because this was the appellate court's gloss on what... This is how the appellate court sustained the superior court's finding that I violated 4.2. It did so by the application of conclusive presumptions and this retroactive application of agency doctrine to the formation of a lawyer-client relationship under 4.2. I had no opportunity... I had no opportunity to... If you believe that, you should have taken that to the U.S. Supreme Court. If you had gotten searched, you'd have had an argument down in Washington. I do not believe, Your Honor, that the U.S. Supreme Court had jurisdiction, because what was outstanding was this interlocutory protective order. Now, even if that could have been done as a... Mr. Mandela, we've heard enough. We will reserve decision. We thank all of you for your arguments. We're going to move on to the next case.